CROSS, et al. *v.* FIELD, et al.

No. 42351          May 28, 1962          141 So. 2d 733

*Aaron L. Ford,* Jackson, for appellants.

*James H. Adams,* Raymond, for appellees.

JONES, J.

On September 19, 1953, the complainant, William Cross, was about 82 years of age. He owned or claimed 106.2 acres of land, 80 acres of which was situated in Section 36, and the other situated in Section 25, all in Township 15 North, Range 5 East, Hinds County. He lived upon this land with his wife. His house was situated in the SE¼ of the SE¼ of Section 25 just across the road from the lands described in the deed hereinafter copied. He was illiterate and unlearned. On the date aforesaid, he executed and delivered without the signature of his wife what is termed a gravel, sand and clay conveyance, which because of its importance in this decision is copied in full, except for the acknowledgment, towit:

"For and in receipt of Five Dollars cash paid, the receipt of which is hereby acknowledged, and the further consideration of the grantee herein promoting the discovery and opening of a gravel pit on lands belonging to the undersigned, I, William Cross, do hereby bargain, sell, deliver, set over and assign unto Will Ward Field a one-half undivided interest in and to any and all gravel, sand and clay in, on and under lands situated in the Second Judicial District of Hinds County, Mississippi, described as:

"Being all that part of the SE¼ of SE¼ of Section 25, Township 15 North, Range 5 East, lying North of the Raymond-Baldwin's Ferry Road.

"I further name, constitute and appoint the said Will Ward Field my agent and attorney-in-fact for the purpose of negotiating and handling all business transactions relative to all the gravel, sand and clay hereinabove mentioned, and also for the purpose of receiving all warrants or payments for any sand, gravel and clay

that may be mined and sold from the above described land.

"Witness my signature hereto on the 19 day of September, 1953.

His<br>/s/ William Cross    X<br>Mark''

On August 8, 1961, he and his wife and others interested in the land filed suit in the Chancery Court of the Second Judicial District of Hinds County to cancel said instrument, alleging four grounds therefor, towit: (1) No meeting of the minds of the parties; (2) that the said William Cross was overreached by the defendants; (3) that the consideration for said instrument had wholly and totally failed; and (4) that the wife of complainant did not join her husband in the execution of said instrument which included a portion of the 106 acres claimed as a homestead. After a hearing the chancellor found that there was no overreaching; that there was sufficient consideration, although there had been no gravel pit opened and no gravel sold, and that it was not the homestead and, therefore, unnecessary for the wife to sign.

The defendant grantee answered and denied the title of complainant, and then admitted it was not necessary to deraign title because his title derived from a common source, towit, the complainant. He depended on no right or title of any kind except such as was conveyed to him by the complainant, William Cross. Notwithstanding the fact that defendant denied William Cross's title, he, as aforesaid, admitted that was the only title he had and he asked for a dismissal of the bill of complaint with prejudice which would, in effect, establish his rights under the deed as against the complainant whom he said had no title when he executed it.

The chancellor held that the title of William Cross was doubtful and in dispute, and for that reason

the land did not constitute part of his homestead, the property having been misdescribed in his original deed. With reference to this holding of the chancellor, we call attention to the fact that this deed, the rights under which the defendant desired to retain, (1) acknowledged the title of William Cross to the lands therein described, (2) carried an executory provision that the grantee would promote the discovery and opening of a gravel pit, (3) appointed the grantee as a continuing agent and attorney-in-fact of William Cross for the purpose of negotiating and handling all business transactions relative to all the gravel, sand and clay therein, and also for the purpose of receiving all warrants or payments for any such minerals that might be mined and sold from the above described land. We have, as stated, an acknowledgment of the title, an executory agreement, a fiduciary relationship consisting of agent and attorney-in-fact, to represent William Cross and handle for him the sale of gravel from the land described in the deed. And while the defendant was denying the title and seeking on that ground a practical confirmation of his own title, he was seeking to continue to be clothed with authority to sell sand and gravel from said land, to which if the complainant had no title he would have no title or right to sell. No one should be permitted to do this in a court of equity and good conscience.

We cite only two statements from 31 C.J.S., Estoppel, page 118, Section 15, towit: "While no one can impugn the title under which he holds, it is generally held that, by accepting a deed, a grantee is not estopped to deny the grantor's title or seizin, except where the grantee relies on the grantor's conveyance to establish his own claim," and on page 232, under the subheading (b), towit: "As stated in Corpus Juris, which has been quoted and cited by the courts, if, in making a contract, the parties agree on or assume the existence of a particular fact as the basis of their negotiations, they are estopped

to deny the fact so long as the contract stands, in the absence of fraud, accident, or mistake."

We think the learned chancellor was in error in this particular.

■■ ■ The second reason for dismissing the bill of complaint was the chancellor's finding that the approximately 90 acres south of the road was worth $5,000 or more, and, therefore, the portion north of the road would not be part of the homestead. Two disinterested businessmen testified that the whole 106 acres, with which they were familar, was, in 1953, worth from $10 to $15 per acre, making a total valuation of the property, from $1060 to about $1600. Mr. W. B. Field, father of the grantee, was asked the value in 1953 of the entire tract, taking into consideration the gravel pit. He first said it would be "hard to say," and then when asked for his best judgment he replied it would be hard to tell unless you had an estimate of how deep the gravel was. Again he was asked for his best judgment, and he said, "Well, I would think about $1,000 an acre as long as the gravel lasted, and that is more or less guess-work." He had no estimate or knowledge as to how deep the gravel was, nor was anything shown as to what area it covered. It might have been one acre or one-half acre; there was nothing to show.

Mr. W. E. Butts, introduced by defendant, had worked around the property and he placed the value at $1,000 an acre, but stated he had no idea about the depth of the deposit on the south side of the road and he also said when first asked his best judgment as to the value of the property, "Well, I couldn't rightfully say the value of it to be honest with myself, you first would have to — if you were going to base it on the value of the gravel — you would have to know approximately how much gravel was in there and the approximate price you was going to get for it before you could put a price down."

No one testified how much gravel was there and the testimony of these two witnesses was purely guess work and based on no facts showing the depth of the strata of gravel nor the amount thereof.

We think there was no basis for the court's finding that the remaining 90 acres south of the road was worth more than $5,000, if this valuation be material to the case.

■■■ The decree of the lower court is therefore reversed and judgment entered here cancelling the instrument hereinabove copied.

Reversed and judgment here for appellants.

*Lee, P. J.,* and *Gillespie, McElroy* and *Rodgers, JJ.,* concur.